1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF WEST VIRGINIA

3   Charles Carter, et al.,

4         Plaintiffs,

5              vs.                  CIVIL ACTION NO.

6                                  5:19--cv-284
    Tristar Products
7   and
    Kohl's Corporation,
8         Defendants.

9                     - - -

10  Telephonic hearing in the above-styled action on April 16,
    2020, before Honorable James P. Mazzone, Magistrate Judge, at
11  Wheeling, West Virginia.

12                    - - -

13     APPEARANCES:

14     On Behalf of the Plaintiff: (via telephone)
           Steven D. Cohn
15         Patrick C. Booth
           Chaffin Luhana, LLP
16         615 Iron City Drive
           Pittsburgh, PA  15205
17         888.316.2311
       On Behalf of the Defendant: (via telephone)
18         Jeffrey A. Holmstrand
           Grove, Holmstrand & Delk
19         44 1/2  15th Street
           Wheeling, WV  26003
20         304.905.1961

21         Thaddeus J. Hubert, IV
           Goldberg Segalla
22         301 Carnegie Center, Suite 200
           Princeton, NJ  08540
23         609.986.1300
       Proceedings recorded utilizing realtime translation.
24     Transcript produced by computer-aided transcription.

25

```
 1                              Thursday Morning Session,

 2                              April 16, 2020, 11:00 a.m.

 3                                    - - -

 4        MR. COHN:  Steven Cohn from Chaffin and Luhana for

 5   plaintiffs.

 6        MR. BOOTH:  Patrick Booth for plaintiffs.

 7        MR. HOLMSTRAND:  Jeff Holmstrand.

 8        MR. HUBERT:  This is Thad Hubert from Goldberg Segalla.  I

 9   believe we have all the parties on the line now.

10        THE COURT:  Good morning, folks.  This is Judge Mazzone.

11   How are you?

12        MR. COHN:  Good morning, Your Honor.

13        THE COURT:  Okay.  Do we have everyone on the line?

14        MR. COHN:  I believe so, Your Honor.

15        THE COURT:  Okay.  Why don't you guys, just for the

16   benefit of the court reporter, go around and identify

17   yourselves and who you're appearing on behalf of, please.

18        MR. COHN:  For plaintiffs, this is Steven Cohn from

19   Chaffin Luhana.

20        MR. BOOTH:  This is Patrick Booth from Chaffin Luhana as

21   well.

22        MR. HOLMSTRAND:  This is Jeff Holmstrand with Grove,

23   Holmstrand & Delk, on behalf of Tristar and Kohl's Corporation.

24        MR. HUBERT:  Good morning, Your Honor.  This is Thad

25   Hubert, IV of Goldberg Segalla on behalf of Kohl's and Tristar.
```

1    THE CLERK:  This is Nicole.  I just want to note one

2  thing.  I think that I got Jeff Holmstrand, but on my end at

3  least it's very, very hard to hear him.

4    MR. HOLMSTRAND:  You got it correct.

5    THE COURT:  Okay.  Let's go ahead and get started.  This

6  was set down pursuant to the joint request for a discovery

7  conference pursuant to the scheduling order.  Why don't one of

8  you guys go and take the lead and give me a little update on

9  where you're at procedurally in regards to discovery and

10  discovery issues.

11    MR. COHN:  Your Honor, this is Steven Cohn for plaintiffs.

12  We are the ones that requested the hearing jointly with

13  defendants prior to plaintiffs filing a motion to compel

14  discovery.

15    Briefly, Your Honor, the parties have exchanged initial

16  requests for documents and interrogatories.  There's been

17  initial exchange of discovery.  No depositions have been taken

18  yet, so we're fairly early on in discovery.

19    Briefly, as way of background, this is product

20  liability/personal injury case involving our client, Charles

21  Carter, who is an EMT and volunteer fireman in Marion County,

22  Virginia.  We have alleged here that he was using the family's

23  Tristar pressure cooker that was purchased at Kohl's when it

24  exploded, horribly burning and injuring him to his abdomen and

25  to his left arm.  Those injuries and burns have left arm

1   scarring and skin discoloration.

2      We propounded initial interrogatories and document requests

3   on defendants, related to things such as prior produced

4   discovery, prior transcripts, expert reports, and prior

5   complaints of injuries and defects, all relating to defendants'

6   knowledge of the hazard and alternative feasible designs, all

7   of which are material elements of plaintiffs' claims here.

8      In response, defendants have agreed to produce discovery

9   related to three Tristar pressure cooker models, one of which

10   is the subject model here.  And we have requested discovery on

11   all Tristar pressure cooker models from defendants.

12      Separate from discovery that defendants have produced here,

13   we have discovered independently that at least 19 separate

14   actions have been filed against Tristar in various state and

15   courts across the country related to various Tristar pressure

16   cooker models.

17      In addition, a federal class action case was filed in the

18   Northern District of Ohio related not only to the subject

19   pressure cooker model, but 19 Tristar pressure cooker models.

20   That case alleged the same exact defects in all Tristar

21   pressure cookers and the same warnings which Tristar propounded

22   to the public and which was contained in the owner's manual for

23   all 19 models; namely, pressure cookers all have a base and a

24   lid.  What Tristar put in all their owner's manuals and stated

25   to the public was that the Tristar pressure cookers came with

1    safety features, meaning that if there was any pressure still

2    inside the cooker, a user could not take the lid off if there

3    was pressure inside.  If a lid comes off while there is still

4    pressure inside the cooker, the liquid inside would cause

5    injury to a user, exactly what happened here.

6        That federal class action case went through complete fact

7    and expert discovery and went to trial.  During trial it

8    reached a settlement which was approved by the federal district

9    court and which was, of course, unopposed by Tristar, where

10   notice went out to all owners of 19 different Tristar user

11   models that the notice contained, which was approved by the

12   Court, that all 19 models contained the same defect and the

13   owner's manuals for all 19 pressure cooker models contained the

14   same exact warnings.

15       Defendants here have refused to produce discovery on 16

16   other pressure cooker models based on a relevancy and burden

17   objection.  It's plaintiffs' contention that those objections

18   are meritless based on the fact that all 19 pressure cooker

19   models contain the same defect, and the burden of objections

20   are also less because most of this discovery has already been

21   collected and produced by Tristar, certainly in the federal

22   class action case and most likely in many other cases across

23   country.

24       THE COURT:  Okay.  Defendants want to go ahead and

25   respond.

1       MR. HUBERT:  Sure, Your Honor.  This is Thad Hubert from

2   Goldberg Segalla.

3       Number one, plaintiff never raised these issues, this

4   argument, with me during the meet and confer or any of our

5   follow-up conversations regarding the information -- this

6   extensive information he seems to have from a class action

7   lawsuit at which time my firm did not represent Tristar.

8       Number two, I can tell you that there are differences

9   between the model at the -- the subject model at issue and

10  other Tristar models.  What plaintiff requested -- has

11  requested is every lawsuit involving Tristar, not just pressure

12  cookers, but every lawsuit, and then he wants every pressure

13  cooker from -- starting from 2008.  The 780 was -- came into

14  design and manufacture between 2013 and 2015.

15      When plaintiff requested this information, or this

16  discovery, he sought it under the West Virginia state civil

17  procedure rule.  In my opposition to his request, I cited Rule

18  26(b)(1) which discusses the proportionality of the discovery.

19  Some of the factors that go into that analysis is the

20  importance of the evidence.

21      Here, Tristar is willing to give him the 780 model and the

22  other two models that are -- that have the same exact design,

23  one being a smaller pressure cooker and the other being a

24  larger pressure cooker.  We're willing to work with him over

25  that time frame.  But plaintiff has not yielded from his

1   initial position throughout this entire process.

2       So if Tristar were to give him this information, it would

3   be, quite frankly, the best evidence of notice and causation of

4   prior incidents which he's free to prove at the trial.  What he

5   wants is information that is different designs and different

6   mechanisms in terms of how the product works.  That's not going

7   to help him that much at a trial.  And that takes us to the

8   next part of the proportionality analysis, which is the

9   importance of the issue.

10      The importance of the issue is how this model -- whether

11  this model was defectively designed and whether prior incidents

12  involving this subject model gave Tristar notice of a defect,

13  and whether those prior incidents will help them establish

14  causation.  So I've never heard a response to my

15  proportionality analysis throughout this entire time period,

16  and now for the first time I'm hearing something about a class

17  action lawsuit where he seems to have plenty of information

18  regarding the case that he's never discussed with me before

19  today, before we've all been here together over the phone with

20  Your Honor.

21      Finally, this case involves an individual who a few weeks

22  after the incident had minimal pain, never had any surgeries,

23  never had any debridements, has a small five-figure lien for

24  outstanding medical expenses.  And plaintiff is trying to get

25  everything and anything under the sun under a case that under

1  the proportionality analysis of 26(b)(1) just doesn't seem to

2  have the appropriate fit for that type of discovery in this

3  case.

4      THE COURT:  Let me ask the plaintiffs, why would you need

5  discovery on models that are not at issue in this case?

6      MR. COHN:  Your Honor, part of the main elements that

7  plaintiffs have to prove here are notice of the hazard and

8  feasible alternative designs, so while there might be slight

9  differences in these models, such as one might be six quarts

10  versus eight quarts, and one might cook food in 20 minutes

11  versus 30 minutes, they're basically the same exact pressure

12  cookers.  And if there is a defect in, say, model C, which is a

13  substantially similar pressure cooker, which occurred, say, a

14  year before our plaintiff was injured here, that would go

15  directly to notice of the hazard to Tristar of the defect in

16  this model.

17      Additionally, we have to prove, which is a material

18  element, feasible alternative designs, so if there is a slight

19  difference in, say, model C versus model A and it's shown that

20  there were 100 injuries with model A and only two injuries with

21  model C, clearly model C would be safe for a feasible

22  alternative design.

23      Additionally, I would just comment that I did discuss the

24  class action case with defense counsel.  We didn't discuss it

25  at length, but he was certainly aware of it, and I mentioned it

1    to him.  And just to clarify as well, Your Honor, we're only

2    seeking discovery related to pressure cookers, not other

3    products that Tristar produces.

4        In addition, Your Honor, also to proportionality I would

5    just mention as well, again, Tristar, if not this particular

6    defense counsel, has already collected and produced this

7    discovery in other litigations.  And in addition, while it's

8    true that plaintiff here didn't have surgery, unfortunately, in

9    most burn cases -- and I've done a lot of burn cases -- burns

10   are not really amenable to surgery unless they're third degree.

11   So plaintiff here has permanent scarring and skin

12   discoloration, but unfortunately surgery won't be able to

13   affect that.

14       In addition, Your Honor, while he didn't have significant

15   medical bills -- it might be five figures because he didn't

16   need to have surgery -- he also does have lost wages as well.

17       THE COURT:  Okay.  The Ohio litigation, the class action,

18   was it limited to Ohio claims only?

19       MR. COHN:  No, Your Honor.  That was a nationwide federal

20   class action.

21       THE COURT:  Okay.  Has a motion to compel been filed yet,

22   or has that not occurred?

23       MR. COHN:  This is Steven Cohn again for plaintiff.  We

24   have that drafted, but per the scheduling order it was required

25   that we have this conference before filing our motion.

1        THE COURT:  Right.  Right.  Okay.  Is there anything else

2   that you guys would like to place on the record with respect to

3   discovery issues?

4        MR. HOLMSTRAND:  This is Jeff Holmstrand, by the way.  I

5   think at some point, Your Honor, we're going to have to talk

6   about the impact that the current COVID-19 situation is putting

7   on everybody.  I mean, we're fortunate here in West Virginia

8   that legal offices aren't closed.  I don't know what the

9   situation is for New York and what it's doing for the

10  businesses, but it's probably something that needs brought to

11  the Court's attention at some point, whether it's on this call

12  or on another one.

13       THE COURT:  Right.

14       MR. HUBERT:  This is Thad Hubert from Goldberg Segalla.

15  My office is closed.  In New Jersey all nonessential businesses

16  are closed.  Tristar's main office is actually in New Jersey.

17  They are closed.  And there will be a -- if certain information

18  needs to be provided, it's going to take a certain period of

19  time that is, quite frankly, a fluid situation.

20       Yesterday the governor of New Jersey, Governor Murphy, said

21  that he didn't expect the stay-at-home order to be lifted until

22  sometime in June or July.  Presently we have a scheduling order

23  that says fact discovery must be completed by September 30th of

24  2020, so I feel like there's going to need to be some

25  flexibility in terms of that scheduling order and any potential

1   production of information.

2       THE COURT:  Right.  Well, the point of this conference

3   wasn't to make rulings on discovery matters.  It was just to

4   air them out so that the Court had an idea what was in the

5   pipeline.

6       What I would suggest is this, is that the parties continue

7   their discussions in an attempt to reach a resolution of the

8   outstanding discovery matters.  To the extent that is not

9   possible and a motion to compel needs to be filed, go ahead and

10  file that motion.  Upon receipt of the motion, the Court will

11  enter an order setting forth a briefing schedule as well as a

12  hearing date for there to be oral argument relative to the

13  issues raised in any motion.

14      Of course, anything that may need to be altered with

15  respect to the motion and scheduling due to the current

16  circumstances involving the virus, that will be taken up at the

17  appropriate time.  Any changes to the scheduling order or

18  amendments to the scheduling order, extensions or anything like

19  that, would need to be raised directly with the District Court.

20  And as I understand it, the only issue concerning discovery in

21  dispute right now involves this first set of written discovery,

22  correct?

23      MR. COHN:  That's correct, Your Honor.

24      MR. HUBERT:  This is Thad Hubert again.  I will add that

25  we have produced about 1300 pages of documents to the

1   plaintiffs and obviously that relates to the model at issue.

2       THE COURT:  Okay.  Well, as I indicated, I would strongly

3   urge that you guys continue discussions in an attempt to reach

4   a resolution of the discovery issues.  To the extent that

5   cannot occur, go ahead and file whatever motion needs to be

6   filed.  That will trigger a briefing schedule and hearing date,

7   understanding, of course, those dates may need to be altered

8   due to unavailability or scheduling difficulties because of the

9   virus.

10      Does anyone have any questions?

11      MR. COHN:  No, Your Honor.

12      THE COURT:  Okay.  I would like -- if plaintiffs' counsel

13  could go ahead and propose an order relative to today's

14  proceedings and circulate it and ultimately submit it to

15  Ms. Hutnick by email, my clerk, upon receipt I will take a look

16  at it and if appropriate see that it is entered.

17      MR. COHN:  This is Steven Cohn for plaintiffs.  We will do

18  that, Your Honor.

19      MR. HUBERT:  Your Honor, if I could for one second -- this

20  is Thad Hubert again.  I would propose -- and plaintiffs'

21  counsel, feel free to disagree with me, but I would propose

22  that we be given until May 1st to see if we can resolve the

23  issue, and if not by May 1st, the plaintiff can file his

24  motion.

25      MR. COHN:  This is Steven Cohn from plaintiffs.  Certainly

 1    I will meet and confer with defense counsel and we'll attempt,

 2    obviously, in good faith to resolve it, but at some point if

 3    we're not able to resolve it, either on a meet and confer, at

 4    that point I think it would make sense for us to go ahead and

 5    file our motion, which we've already drafted.  I don't know if

 6    necessarily putting a May 1st deadline on it makes sense.

 7         THE COURT:  In thinking about it, frankly I think a

 8    deadline probably would be a good idea to keep this thing on

 9    track.  When do you guys anticipate conducting a meet and

10    confer?

11         MR. COHN:  I'm available -- talk to my client.  I'll

12    probably have a conversation later today, and then I'm sure we

13    can set something up by the middle or end of next week or the

14    week after that, last two weeks of April, that I think that

15    will give us a pretty good idea of where we are by the first

16    week of May.  I was just going to say I'm available, obviously,

17    at any point with defense counsel to discuss it further.

18         THE COURT:  Go ahead and include May 1st as a time frame

19    within which to conduct the meet and confer, and ultimately

20    advise the Court as to whether or not the issues have been

21    resolved or whether or not a motion will be filed.  And of

22    course, if a motion is to be filed, it should be filed by then

23    as well.

24         MR. COHN:  Yes, Your Honor.

25         THE COURT:  Okay.  Anything else?

1        MR. COHN:  No, Your Honor.

2        MR. HUBERT:  No, Your Honor.

3        THE COURT:  Okay, guys.  Thanks very much.  Good talking

4    with you and take care and be safe.

5        (Proceedings concluded at 11:20 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2        I, Cindy L. Knecht, Registered Professional Reporter and

3   Official Reporter of the United States District Court for the

4   Northern District of West Virginia, do hereby certify that the

5   foregoing is a true and correct transcript of the telephonic

6   proceedings had in the above-styled action on April 16, 2020,

7   as reported by me in stenotypy.

8        I certify that the transcript fees and format comply with

9   those prescribed by the Court and the Judicial Conference of

10  the United States.

11       Given under my hand this 13th day of May 2020.

12                           /s/Cindy L. Knecht

                             _____
13                           Cindy L. Knecht, RMR/CRR
                             Official reporter, United States
14                           District Court for the Northern
                             District of West Virginia
15

16

17

18

19

20

21

22

23

24

25